IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.   22-cr-00063-DDD

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.    PATRICIA ANN GILROY,

    Defendant.

## INFORMATION

The UNITED STATES ATTORNEY charges that:

### COUNT ONE
### 18 U.S.C. § 1343

**General Allegations**

On March 27, 2020, the President of the United States signed into law the Coronavirus Aid, Relief, and Economic Security (CARES) Act, which provided emergency assistance, administered by the United States Small Business Administration (SBA), to small business owners affected by the Coronavirus (COVID-19) pandemic.  The two sources of funding for small businesses were the Paycheck Protection Program (PPP) and the Economic Injury Disaster Loans (EIDL) program.  The CARES Act mandated that only businesses in operation on February 15, 2020, for PPP, or before February 1, 2020, for EIDL, were eligible under the programs.

PPP loan proceeds were required to be used for certain permissible expenses, including payroll costs, mortgage interest, rent, and utilities. To obtain a PPP loan, a qualifying small business was required to submit a PPP loan application, signed by an authorized representative of the business, in which the applicant acknowledged the program rules and made certain affirmative certifications. The applicant was also required to state the business's: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the loan amount that the business was eligible to receive under the PPP. Businesses were also required to provide documentation showing their payroll expenses. PPP loan applications were received and processed, in the first instance, by a participating lender. If a PPP loan application was approved, the participating lender funded the loan using its own monies, but the loans were guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan. The SBA paid participating lenders a processing fee for each funded PPP loan.

At all times relevant to this plea agreement and until April 2021, under the EIDL program, a small business could receive a loan from the SBA in an amount of up to six months of working capital with a maximum of $150,000. The SBA determined the amount of the loan for which each small business was eligible based, in part, on the amount of gross revenues and cost of goods sold for the business set forth in the EIDL application.

**The Scheme**

1. Beginning in or about April 2020 and continuing through in or about April 2021, in the State and District of Colorado and elsewhere, defendant PATRICIA ANN GILROY (GILROY) devised and intended to devise a scheme to defraud the SBA and to obtain money by means of materially false and fraudulent pretenses, representations, and promises (herein after referred to as the "Scheme"). The Scheme was executed in connection with seeking loans under the PPP and EIDL programs as authorized by the CARES Act by submitting false and fraudulent EIDL and PPP loan applications on behalf of ten inactive, shell companies. It was part of the Scheme that:

   a. From at least April 2020 through at least April 2021, defendant GILROY controlled 10 shell companies that had not been active companies with employees, gross receipts or costs of goods sold during the 12 months prior to January 31, 2020, and had not been in operation on February 15, 2020, or prior to February 1, 2020;

   b. From in or about April 2020 through in or about April 2021, defendant GILROY submitted eight false and fraudulent PPP applications to lenders on behalf of six of these shell companies; three of the applications were approved, resulting in a total of $518,135 being sent to bank accounts controlled by GILROY;

   c. In all eight of these PPP applications, Gilroy knowingly and with the intent to defraud made materially false statements about each shell company's: (1) average monthly payroll; (2) number of employees; (3)

      eligibility to receive the loan; and (4) intent to use the loan proceeds only for business-related purposes as permitted under PPP;

d. With these eight PPP applications, Gilroy also knowingly and intentionally submitted fraudulent supporting documentation, including false tax forms to support her false statements about payroll;

e. GILROY also fraudulently applied for and received second draw payments under PPP for two of these shell companies, resulting in a total of an additional $52,916 being sent to bank accounts controlled by GILROY;

f. From in or about August 2020 through in or about November 2020, defendant GILROY also submitted false and fraudulent applications on behalf of six of these shell companies to the SBA seeking loans under the EIDL program. Two of those EIDL applications were approved and funded by the SBA, resulting in a total of $294,300 being sent to bank accounts controlled by GILROY;

g. In all six EIDL applications, GILROY knowingly and with the intent to defraud made materially false statements about: (1) the number of employees each company had as of January 31, 2020; and (2) the amount of gross revenues and cost of goods sold that each company had in the 12 months prior to January 31, 2020;

h. Additionally, in connection with each of the two funded EIDL loans, GILROY signed a Loan Authorization and Agreement in which she falsely agreed to "use all proceeds of this Loan solely as working

        capital to alleviate economic injury caused by the disaster occurring in the month of January 31, 2020 and continuing thereafter and to pay Uniform Commercial Code (UCC) lien filing fees and a third-party UCC handling charge of $100 which will be deducted from the Loan amount";

    i. In fact, defendant GILROY had always intended to, and did, use the PPP and EIDL proceeds for other purposes not authorized by the CARES Act; and

    j. As a result of these fraudulent PPP and EIDL applications, bank accounts controlled by defendant GILROY received a total of $865,351 in PPP and EIDL proceeds.

**<u>Execution of the Scheme</u>**

    2.    For the purpose of executing the Scheme described in paragraphs 1a. through 1j. above, defendant GILROY caused to be transmitted the following interstate wire communication pertaining to an EIDL that defendant GILROY applied for on behalf of Pest Control Services: on or about November 3, 2020, the SBA in Denver, Colorado created and certified the payment file for this loan to Pest Control Services and transmitted it via interstate wire communications from Colorado to the U.S. Treasury processing site located in the Kansas City Regional Operations Center in Kansas City, Missouri.  After a computer operator at the U.S. Treasury disbursing office in Kansas City, Missouri performed payment operations to complete the processing of the file, an Automated Clearing House (ACH) payment file was transmitted to the Federal Reserve Bank ACH processing site in New Jersey.  The Federal Reserve Bank in New Jersey

processed the payment file and sent $144,400 to Bank of America in Missouri with Pest Control Services designated as the payee.

All in violation of Title 18, United States Code, Section 1343.

## Forfeiture Allegation

4. The allegations contained in Count One of this Information are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. §§ 981(a)(1)(C) and 28 U.S.C. § 2461(c).

5. Upon conviction of the violation alleged in Count One of this Information involving a violation of 18 U.S.C. § 1343, defendant PATRICIA ANN GILROY shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c) any and all of the defendant's right, title and interest in all property constituting and derived from any proceeds the defendant obtained directly and indirectly as a result of such offense, including, but not limited to the entry of a money judgment in the amount of proceeds obtained by the scheme and by the defendant.

6. If any of the property described above, as a result of any act or omission of the defendant:

    a)    cannot be located upon the exercise of due diligence;

    b)    has been transferred or sold to, or deposited with, a third party;

    c)    has been placed beyond the jurisdiction of the Court;

    d)    has been substantially diminished in value; or

    e)    has been commingled with other property which

cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property.

COLE FINEGAN
UNITED STATES ATTORNEY

s/ *[signature]*
By: Pegeen D. Rhyne
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, CO 80202
Phone: (303) 454-0100
Fax: (303) 454-0402
pegeen.rhyne@usdoj.gov

s/ *Sarah H. Weiss*
By: Sarah H. Weiss
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, CO 80202
Phone: (303) 454-0100
Fax: (303) 454-0402
sarah.weiss@usdoj.gov