**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Criminal Case No. 22-cr-00063-DDD**

**UNITED STATES OF AMERICA**

        **Plaintiff,**

**v.**

**1.  PATRICIA ANN GILROY,**

        **Defendant,**

---

**PLEA AGREEMENT AND STATEMENT OF FACTS
RELEVANT TO SENTENCING**

---

The United States of America, by and through Pegeen D. Rhyne and Sarah H. Weiss, Assistant United States Attorneys for the United States Attorney's Office for the District of Colorado (the "government"), and the defendant, Patricia Ann Gilroy ("Gilroy" or the "defendant"), personally and by counsel, Peter Aiken, submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1.  This agreement binds only the Criminal Division of the United States Attorney's Office for the District of Colorado and the defendant.

## I.  AGREEMENT

**A.  Defendant's Plea of Guilty:**

The defendant agrees:

    (1)    to waive indictment and plead guilty to a single-count Information,

Court's Exhibit

1

charging a violation of 18 U.S.C. § 1343 (wire fraud);

(2)  to waive certain appellate and collateral attack rights, as explained in detail below;

(3)  to be liable for restitution to the SBA and participating lenders in the amount of $907,427.69, plus interest accruing through the date of the sentencing hearing, with additional information about apportionment between the SBA and participating lenders being provided at the sentencing hearing;

(4)  to pay $50,000 toward restitution at or before the time of sentencing; and

(5)  not to contest forfeiture as more fully described below.

**B.    The Government's Obligations:**

This agreement is made pursuant to Fed.R.Crim.P.11(c)(1)(A). The government agrees not to bring other charges against the defendant based on information currently known to the United States Attorney's Office, District of Colorado concerning fraud against the government programs described below.   Should the plea of guilty be vacated on the motion of the defendant, the government may, in its sole discretion, file an indictment with additional charges.

Provided the defendant does not engage in prohibited conduct or otherwise implicate USSG §§ 3C1.1 and 3E1.1, cmt. n.4 between the guilty plea and sentencing in this case, the government agrees that the defendant should receive a two-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a) and agrees to file a motion requesting that the defendant receive a one-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(b).

The government agrees to recommend a sentence at the low-end of the applicable guideline range for the criminal history and a total offense level calculated by the Court at sentencing.

**C.      Defendant's Waiver of Appeal:**

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence (including the restitution order), unless it meets one of the following criteria:

(1)    the sentence exceeds the maximum sentence provided in the statute of conviction, 18 U.S.C. § 1343;

(2)    the sentence exceeds the top end of the advisory guideline range from the Sentencing Guidelines that applies for the defendant's criminal history (as determined by the district court) at a total offense level of 18; or

(3)    the government appeals the sentence imposed.

If the first criteria applies, the defendant may appeal only the issue of how his sentence exceeds the statutory maximum sentence.   But if one of the latter two criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence (including the restitution order) in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255. This waiver provision does not prevent the defendant from seeking relief otherwise available

in a collateral attack on any of the following grounds:

> (1)     the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute;

> (2)     the defendant was deprived of the effective assistance of counsel; or

> (3)     the defendant was prejudiced by prosecutorial misconduct.

The Defendant also waives the right to appeal any sentence imposed below or within the Guideline range upon a revocation of supervised release in this cause number. The Defendant also waives the right to appeal the denial of any motion filed under 18 U.S.C. § 3582(c)(1)(A) where such denial rests in any part upon the court's determination that "extraordinary and compelling reasons" for a sentence reduction are lacking or that a sentence reduction is not warranted under the factors set forth in 18 U.S.C. § 3553(a).

**D:     Forfeiture of Assets:**

The defendant admits the forfeiture allegations.   The defendant further agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), whether in the possession or control of the United States, the defendant, the defendant's nominees, or elsewhere.   The assets to be forfeited specifically include, but are not limited to: a money judgment in the amount of $865,351.   The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative forfeiture action.     The defendant further agrees to the forfeiture of any substitute assets up to the value of any property described above pursuant to 21 U.S.C. § 853(p) and Federal Rules of Criminal Procedure 32.2(e).

4

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

The United States Attorney's Office for the District of Colorado will recommend to the Attorney General that any net proceeds derived from the sale of the judicially forfeited assets be remitted or restored to eligible victims of the offense, for which the defendant has pleaded guilty, pursuant to 18 U.S.C. § 981(e), 28 C.F.R. pt. 9, and any other applicable laws, if the legal requirements for recommendation are met.   The defendant understands that the United States Attorney's Office only has authority to recommend such relief and that the final decision of whether to grant relief rests solely with the Department of Justice, which will make its decision in accordance with applicable law.

## II.   ELEMENTS OF THE OFFENSE

The parties agree that the elements of the wire fraud offense charged in the single-count Information are as follows:

A.   The defendant devised a scheme to defraud;

B.   The defendant acted with specific intent to defraud;

C.   The defendant used, or caused another person to use, interstate or foreign wire communications facilities for the purpose of carrying out the scheme; and

D.   The scheme employed false or fraudulent pretenses,

representations, or promises that were material.[1]

## III. STATUTORY MAXIMUM SENTENCE

The maximum sentence for a violation of 18 U.S.C. § 1343 is: not more than 20 years of imprisonment, a fine of not more than the greater of $250,000 or twice the gain or loss from the offense, or both; not more than 3 years of supervised release; a $100 mandatory victim's fund assessment fee; plus restitution in the amount of $907,427.69 plus interest accruing through the date of the sentencing hearing.

## IV.   COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including, but not limited to, the rights to possess firearms, vote, hold elected office, and sit on a jury.

## V.   STIPULATION OF FACTS

The factual basis for this plea is set forth below.   Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts that may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from presenting non-contradictory additional facts which are relevant to the Court's guideline computation, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

---

[1]  Tenth Circuit Pattern Jury Instructions (Criminal Cases), 2021 Edition, § 2.57.

The parties stipulate that the following facts are true and correct.

**Background about the PPP and EIDL Programs under the CARES Act**

On March 27, 2020, the President of the United States signed into law the Coronavirus Aid, Relief, and Economic Security (CARES) Act, which provided emergency assistance, administered by the United States Small Business Administration (SBA), to small business owners affected by the Coronavirus (COVID-19) pandemic.   The two sources of funding for small businesses were the Paycheck Protection Program (PPP) and the Economic Injury Disaster Loans (EIDL) program. The CARES Act mandated that only businesses in operation on February 15, 2020, for PPP, or before February 1, 2020, for EIDL, were eligible under the programs.

PPP loan proceeds were required to be used for certain permissible expenses, including payroll costs, mortgage interest, rent, and utilities.   To obtain a PPP loan, a qualifying small business was required to submit a PPP loan application, signed by an authorized representative of the business, in which the applicant acknowledged the program rules and made certain affirmative certifications.   The applicant was also required to state the business's: (a) average monthly payroll expenses; and (b) number of employees.   These figures were used to calculate the loan amount that the business was eligible to receive under the PPP.   Businesses were also required to provide documentation showing their payroll expenses.   PPP loan applications were received and processed, in the first instance, by a participating lender.   If a PPP loan application was approved, the participating lender funded the loan using its own monies, but the loans were guaranteed by the SBA.   Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees,

7

was transmitted by the lender to the SBA in the course of processing the loan.   The SBA paid participating lenders a processing fee for each funded PPP loan.

At all times relevant to this plea agreement and until April 2021, under the EIDL program, a small business could receive a loan in an amount of up to six months of working capital with a maximum of $150,000.   The SBA determined the amount of the loan for which each small business was eligible based, in part, on the amount of gross revenues and cost of goods sold for the business set forth in the EIDL application.

### Gilroy's Scheme

From in or about April 2020 through in or about April 2021, defendant Patricia Gilroy knowingly and intentionally engaged in a scheme to defraud the SBA by submitting fraudulent PPP and EIDL applications on behalf of ten inactive, shell companies that she controlled, receiving a total of $865,351 as a result of those fraudulent loan applications.

As part of this scheme, from in or about April 2020 through in or about April 2021, Gilroy knowingly and with the intent to defraud submitted eight fraudulent PPP applications to lenders on behalf of six of the shell companies.   Three of those PPP applications were approved and funded, resulting in a total of $518,135 being sent to bank accounts controlled by Gilroy.   In all eight of these PPP applications, Gilroy knowingly and with the intent to defraud made materially false statements about each shell company's: (1) average monthly payroll; (2) number of employees; (3) eligibility to receive the loan; and (4) intent to use the loan proceeds only for business-related purposes as permitted under PPP.   With these PPP applications, Gilroy also knowingly and intentionally submitted fraudulent supporting documentation, including false tax

forms to support her false statements about payroll.   Gilroy also fraudulently applied for and received second draw payments under PPP for two of those companies, resulting in a total of an additional $52,916 being sent to bank accounts controlled by Gilroy.   As a direct result of Gilroy's fraudulent PPP applications, the SBA paid participating lenders $30,906.75 in processing fees in connection with the three funded loans and the two second draw payments.   Gilroy understands and agrees that her restitution obligation includes these processing fees.

Also as part of this scheme, from in or about August 2020 through in or about November 2020, Gilroy knowingly and with the intent to defraud submitted fraudulent EIDL applications to the SBA on behalf of six of the shell companies.   Two of those EIDL applications were approved and funded by the SBA, resulting in a total funding of $294,500 with $294,300 being sent to bank accounts controlled by Gilroy after $100 in UCC loan handling fees was deducted on each loan.   In all six EIDL applications, Gilroy knowingly and with the intent to defraud made materially false statements about: (1) the number of employees each company had as of January 31, 2020; and (2) the amount of gross revenues and cost of goods sold that each company had in the 12 months prior to January 31, 2020.   In all of the applications, Gilroy falsely certified that these statements were true and correct under the penalties of perjury.   In fact, as Gilroy well knew, none of the companies was an active company with any employees or any gross revenue or cost of goods sold in the 12 months prior to January 31, 2020. Additionally, in connection with each of the two funded EIDL loans, Gilroy signed a Loan Authorization and Agreement.   In each of those documents, Gilroy falsely agreed to "use all proceeds of this Loan solely as working capital to alleviate economic injury

9

caused by the disaster occurring in the month of January 31, 2020 and continuing thereafter and to pay Uniform Commercial Code (UCC) lien filing fees and a third-party UCC handling charge of $100 which will be deducted from the Loan amount."   In fact, as Gilroy had intended when she signed and submitted each of the PPP and EIDL applications, Gilroy used the PPP and EIDL proceeds for other purposes, including using the funds toward the purchase of a new home.   The interest accruing on the unpaid balance of these funded EIDL loans through October 1, 2021, is $10,969.94. Gilroy understands and agrees that her restitution obligation includes the interest on the unpaid balance of these EIDL loans that accrues up through the date of her sentencing hearing.   Updated interest figures will be presented at the time of sentencing.

On September 22, 2020, Gilroy knowingly and with the intent to defraud submitted a fraudulent EIDL application to the SBA on behalf of Pest Control Services seeking a loan.   On that application, in order to create the false impression that Pest Control Services was a company that was active and in operation in the year prior to January 31, 2020, Gilroy falsely stated that Pest Control Services: (1) had 3 employees as of January 31, 2020; (2) gross revenues of $328,000 in the 12 months prior to January 31, 2020; and (3) cost of goods sold of $39,000 in the 12 months prior to January 31, 2020.   In fact, and as Gilroy well knew, Pest Control Services had no employees as of January 31, 2020, and had no gross revenues or cost of goods sold in the 12 months prior to January 31, 2020.   In response to this fraudulent EIDL application, the SBA approved and funded a loan of $144,500 to Pest Control Services. **Interstate wire:**   On November 3, 2020, the SBA in Denver, Colorado created and certified the payment file for this loan to Pest Control Services and transmitted it via

interstate wire communications from Colorado to the U.S. Treasury processing site located in the Kansas City Regional Operations Center in Kansas City, Missouri.   After a computer operator at the U.S. Treasury disbursing office in Kansas City, Missouri performed payment operations to complete the processing of the file, an Automated Clearing House (ACH) payment file was transmitted to the Federal Reserve Bank ACH processing site in New Jersey.   The Federal Reserve Bank in New Jersey processed the payment file and sent $144,400 to Bank of America in Missouri with Pest Control Services designated as the payee.

Gilroy agrees that her restitution obligation includes $907,427.69 and the interest accruing through the date of the sentencing hearing.

## VI.   ADVISORY GUIDELINE COMPUTATION AND 3553 ADVISEMENT

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553.   In determining the particular sentence to be imposed, the Court is required to consider seven factors.   One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission.   In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines.   To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute. The Guideline calculation below is the good-faith estimate of the parties, but it is only an estimate.   The parties understand that the government also has an independent obligation to assist the Court in making an accurate determination of the correct guideline range.   To that end, the government may argue that facts identified in the

presentence report, or otherwise identified during the sentencing process, affect the estimate below.

A.   The base guideline is § 2B1.1, with a base offense level of 7. § 2B1.1(a)(1).

B.   An 14-level enhancement applies because the loss was more than $550,000 but less than $1,500,000. §2B1.1(b)(1)(J).

C.   The adjusted offense level is 21.

D.   The defendant should receive a 3-level downward adjustment for timely acceptance of responsibility.   The resulting total offense level is 18.   § 3E1.1(a)-(b).

E.   The parties understand that the defendant's criminal history computation is tentative.   The criminal history category is determined by the Court based on the defendant's prior convictions. Based on information currently available to the parties, it is estimated that the defendant's criminal history category would be I.

F.   The career offender/criminal livelihood/armed career criminal adjustments would not apply.

G.   The advisory guideline range resulting from these calculations is 27-33 months.   However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level(s) estimated above could conceivably result in a range from 27 months (bottom of Category I) to 71 months (top of Category VI).   The guideline range would not exceed, in any case,

the statutory maximum applicable to the count of conviction.

H.     Pursuant to guideline § 5E1.2, assuming the estimated offense level above, the fine range for this offense would be $10,000 to $100,000, plus applicable interest and penalties.

I.     Pursuant to guideline § 5D1.2, if the Court imposes a term of supervised release, that term is at least 1 year, but not more than 3 years.

j.     Pursuant to guideline §5E1.1(a)(1), the Court shall enter a restitution order for the full amount of the victims' losses, which the parties agree will be an amount of $907,427.69 plus interest accruing through the date of the sentencing hearing.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

## VII.   ENTIRE AGREEMENT

The agreement disclosed to the Court is the entire agreement.   There are no other promises, agreements or "side agreements," terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any other terms, promises, conditions or assurances.

9 - 13 - 21
_____
Date

PATRICIA GILROY
Defendant

9| 13|2021
_____
Date

PETER AIKEN
Attorney for Defendant Gilroy

3/31/22
_____
Date

PEGEEN D. RHYNE
SARAH H. WEISS
Assistant U.S. Attorney

14